## LYTLE v. ANDREWS.

## In re POLLARD OIL CO.

Circuit Court of Appeals, Eighth Circuit.
July 10, 1929.

No. 8467.

Frank E. Gill, of Sioux City, Iowa (Franklin E. Gill, of Sioux City, Iowa, on the brief), for appellant.

J. M. Gunnell, of Sioux City, Iowa (C. F. Maennel, of Sioux City, Iowa, on the brief), for appellee.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge. This is a suit by R. J. Andrews, trustee in bankruptcy of the Pollard Oil Company, an Iowa corporation, to recover of the defendant, Charles F. Lytle, $15,100, which Andrews alleges constituted a part of the capital assets of the bankrupt corporation, transferred to the defendant in fraud of creditors. The trial court found for the plaintiff, and rendered a judgment for the amount sued for.

Lytle was the owner of a majority of the stock in the Pollard Oil Company; the rest of the stock in this company was owned by James J. Pollard. All of the Lytle stock was not in the name of Lytle. A few qualifying shares were placed in the names of certain of his employees, who were elected directors of the corporation. Pollard was its president and general manager. Lytle through his dummy directors at all times controlled it.

In April, 1926, Lytle became dissatisfied with the management of the oil company, and entered into a contract with Pollard to sell him his stock for the amount it had cost him, $30,100. The contract was so drafted as to leave Lytle in control of the company until his stock was paid for. The contract expressly stipulated his stock was to be paid for only out of the net earnings of the corporation, and out of the sale of such of its assets as might be sold and applied to the retirement of preferred stock held by Pollard. There is no evidence that Pollard possessed other means to carry out this contract than what he might obtain from the Pollard Oil Company.

During the several months succeeding the making of this contract Pollard paid to Lytle $15,100 out of the assets of the oil company. These payments were made in the face of financial statements which showed that at no time had the company earned a profit; $8,000 of the $15,000 was obtained by the sale of a part of the property of the oil company, which was applied to the retirement of a part of the Pollard preferred stock. The record discloses that the whole time during which these payments were made to Lytle the oil company was indebted to the extent of at least $50,000. In excess of $16,000 of this amount was due the Sioux National Bank on notes, the payment of which was guaranteed by Lytle; $13,741.12 of this was paid by him to the bank after the oil company was adjudicated a bankrupt.

The contract between Pollard and Lytle was entered into in April, 1926. From that time until December of the same year the $15,100 was paid to Lytle out of the assets of the oil company, as above indicated; the last payment being made on November 20, 1926. On December 23, 1926, upon the petition of Pollard and the intervention of Lytle, both of which alleged the insolvency of the oil company, a receiver for it was appointed in the Iowa state court. Under his management the company did business until February 3, 1927, when it was adjudicated a bankrupt. Later this suit was instituted by the

trustee to recover the assets which had passed into the hands of Lytle.

While the evidence may not show conclusively that the corporation was insolvent at the time of the making of the contract for the sale of the Lytle stock to Pollard, it certainly shows that the making of these payments to Lytle inevitably led to its insolvency.

It is first insisted that the bankruptcy court has no jurisdiction to entertain this suit. The suit is brought under section 70e of the Bankruptcy Act (11 USCA § 110(e), which confers upon the trustee the right to avoid by suit in the bankruptcy court any transfer by the bankrupt of its property which any creditor of the bankrupt might have avoided.

Lytle was in control of this company through a dummy board of directors, which ordered or permitted the $15,100 to be paid to him out of the assets of the corporation. While he was not an officer in name, he absolutely controlled the policy and management of the corporation, and in that way secured its assets to be paid to him, in retirement of his stock. Although the money actually received by him passed from the corporation in the name of Pollard, it was but a scheme by which its assets were to be paid to Lytle. Clearly under this state of facts the federal court had jurisdiction to determine this matter.

It is next insisted that the court had no jurisdiction to try this case in equity, but that it should have been transferred to law. This position is apparently supported by Adams v. Jones (C. C. A.) 11 F.(2d) 759, but an examination of that case will show that it involved no trust relationship. This is true of the other authorities cited by appellant in support of this position. This case is governed by Ratcliff v. Clendenin (C. C. A.) 232 F. 61, 63, in which Judge Sanborn laid down the correct rule, saying: "The property of an insolvent corporation constitutes a trust fund held by its officers, first for its creditors, and second for its stockholders, and the execution of a trust and the following and administering of trust funds are immemorial heads of equity jurisprudence."

Under the Iowa law as declared by its courts, the officers of a corporation have no right to apply its assets to the retirement of stock, nor have stockholders a right to receive such assets in retirement of their stock where creditors' rights are affected. When they do, a fiduciary relationship arises, and they hold such funds in trust for creditors, and such transfer may be set aside at the suit of a creditor. Here the trustee in bankruptcy represents the creditors. Hoyt v. Hampe (Iowa) 214 N. W. 720; Wabash Ry. Co. v. Iowa & S. W. Ry. Co., 200 Iowa, 387, 202 N. W. 599.

The jurisdictional questions being settled, we think the conclusions of the trial court as to the facts are justified by the evidence. The contract between Lytle and Pollard was clearly a subterfuge to permit Lytle to withdraw from the capital assets of the corporation an amount equal to the value of his stock. The wording of the contract which declared its object to be legal did not make it so, since the result of carrying it out was to apply the assets of the corporation in a way which was illegal. Although Lytle was not in name an officer of the corporation, he was nevertheless an active participant in a scheme to use the corporate assets to retire his own stock, and in that way defeat the rights of creditors. At least one creditor, the Sioux National Bank, exists whose claim is unsatisfied. The trustee, therefore, has a right to set aside this transfer, and, when it is set aside, the recovery inures to the benefit of all creditors of the bankrupt estate. Since the transfer was without consideration and there is an existing creditor, the insolvency of the corporation at the time of the transfer is not necessary to the setting aside of the fraudulent transfer. Bush v. Export Storage Co. (C. C.) 136 F. 918.

Conceding the right of plaintiff to recover, the defendant lastly insists that he is entitled to set off the $13,741.12 which he paid to the Sioux National Bank on his guaranty contract. The term "mutual debits and credits" in the bankruptcy law does not include a claim like the one involved here. Lytle received these funds in violation of a trust, and cannot in that way obtain a preference. The manner in which he obtained these assets precludes him from setting up that they were obtained under contract with the corporation. The amount which he paid on his guaranty is entitled to share ratably in the assets of the corporation, but cannot be used as a set-off in this case.

The decree of the court below is affirmed.