**In re PLYMOUTH PLAZA OFFICE BUILDING ASSOCIATES, a Pennsylvania partnership, Debtor.**

**PLYMOUTH PLAZA OFFICE BUILDING ASSOCIATES, Plaintiff,**

**v.**

**AMERICAN REAL ESTATE ASSOCIATES, INC., John G. Berg, and Berg & Daniels, a law partnership, Defendant.**

**Bankruptcy No. 81–01414G.
Adv. No. 81–1431G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Dec. 18, 1981.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for plaintiff, Plymouth Plaza Office Bldg. Associates.

Michael S. Silberman, Howard Gershman, Blue Bell, Pa., for defendants, American Real Estate Associates, Inc. and John G. Berg.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the debtor is entitled to possession of certain leased premises from the defendants for the defendants' failure to pay rent. We conclude that some of the credits asserted by the defendants against their rental obligation were unauthorized and that, therefore, the debtor is entitled to possession of the premises as a result of the defendants' default in rental payments. We conclude further that the debtor is entitled to judgment against one of the defendants, the lessee for those defaulted rental payments.

The facts of the case are as follows: [1] On December 1, 1980, Plymouth Plaza Office Building Associates ("the debtor") and American Real Estate Associates, Inc. ("AREA") entered into a written lease whereby AREA was to occupy two suites on the second floor of One Plymouth Plaza, Plymouth Meeting, Pennsylvania. The rent due under that lease was $1,400.00 per month. The lease further provided that work necessary to refurbish and to redecorate the leased premises was to be paid by the lessor, the debtor, with a maximum redecoration allowance of $6,000.00.[2] Before occupying the premises, AREA had the suites redecorated at a cost of at least $6,000.00, which AREA paid. AREA also had the common hallway recarpeted at an additional cost of approximately $7,200.00.

Shortly after occupying the leased premises, AREA notified the debtor that it was unable to use one of the two offices because of a problem with the ventilation system. AREA therefore notified the debtor that it was moving from that office to an adjacent office (Suite 213) in late February, 1981. However, AREA did not remove all of its equipment from the first office.

On April 15, 1981, the debtor filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code"). On August 13, 1981, the debtor's counsel notified AREA that it was in default under the lease for failure to pay rent and that it also owed the debtor additional rent by virtue of its occupancy of Suite 213. AREA failed to respond to that letter and on August 28, 1981, the debtor's counsel advised AREA that, by reason of its failure to pay rent, it must vacate the premises within 15 days of service of the notice and that the lease would terminate on the fifteenth day after that service. The debtor's counsel further demanded that AREA vacate Suite 213.[3]

On October 20, 1981, the debtor filed the instant complaint against AREA and John G. Berg ("Berg"), the president of AREA,[4] alleging that AREA had failed to make any rental payments due under the lease, had failed to pay any rent for Suite 213 and had failed to vacate the premises as demanded by the debtor. In their amended answer, AREA and Berg asserted that no rent was due from them for the leased premises because they had the right to setoff, against the rent due, certain credits due them by the debtor including: (1) the $6,000.00 redecoration cost, (2) the $7,200.00 recarpeting cost, (3) certain overdue notes assigned, with recourse, by the debtor to Berg in the amount of approximately $38,200.00 and (4)

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. See ¶ 32, Exhibit P–3, lease dated October 8, 1980, between PPOBA and AREA.

3. See Exhibits P–4, P–5 and P–6, letters to AREA from the debtor's counsel. From the receipts attached thereto and the testimony presented at trial, it is evident that those letters were received by an AREA employee.

4. The debtor also named as a defendant Berg & Daniels, a law partnership. At the trial, however, the debtor dropped its claim against that defendant as well as its claim for a money judgment against Berg. It appeared from the testimony at trial that Berg & Daniels never occupied the premises in question and that Berg only occupied them in his capacity as president of AREA.

the personal liability of Berg (in the amount of $900,000.00) on the first mortgage on the building in which the premises are located. Berg and AREA further contended that no rent in addition to the rent due under the lease was due for Suite 213 because the parties had intended to substitute that office for the one which AREA was unable to use because of poor ventilation.

At the trial the debtor offered evidence that Berg and AREA had failed to make any rental payments due under the lease or due for Suite 213. The debtor further offered evidence that the rent due was as follows: prepetition rent under the lease of $6,346.56; prepetition rent for Suite 213 of $894.65; postpetition rent under the lease (to October 20, 1981) of $8,556.64 plus $1,400.00 per month thereafter; and postpetition rent for Suite 213 (to October 20, 1981) of $3,275.30 plus $533.00 per month thereafter.[5]

■ The first defense of AREA and Berg depends on their right to setoff the $6,000.00 redecoration credit against the rent due. Section 553 of the Code preserves the right of a creditor to setoff prepetition debts.[6] The evidence presented at trial on this point established that AREA was entitled to a $6,000.00 credit from the debtor for redecorating costs and that that $6,000.00 was in fact expended by AREA on redecorating the offices prior to the filing of the petition under chapter 11 by the debtor. Hence, we conclude that AREA is entitled to setoff that amount against the prepetition rent due by AREA.

■ But with respect to the $7,200.00 recarpeting credit claimed by AREA, we find that AREA is not entitled to that credit. There was nothing in the lease authorizing such a credit. What is more, although Berg testified that he had been authorized by the chairman of the board of directors of the debtor's general partner to replace the carpet in the common hallway, no other evidence was offered to corroborate that testimony and we do not find it credible. In contrast, there was testimony by the managing agent of the property that the debtor and its general partner had never authorized the recarpeting and had, in fact, specifically instructed the managing agent not to give credit for it. Furthermore, a letter from the Vice President of the general partner to the managing agent was introduced into evidence and supported the debtor's contention that no such authorization was given for the recarpeting. Consequently, we find that the more credible testimony was that no authorization was given for the recarpeting. Therefore, we conclude that AREA is not entitled to a setoff of the $7,200.00 against the rent due.

■ With respect to the third defense raised by AREA and Berg, we deduce that the defendants are not entitled to setoff the notes owned by Berg against the rent due. In this case, the defendants have asserted on numerous occasions that Berg was not personally liable for the rental of the premises, that he did not sign the lease in his individual capacity (but only as the president of AREA) and that he only occupied the premises as the president of AREA. In addition, the debtor had amended its complaint at trial to omit any claim for a money judgment against Berg for the rent due and requested only an order directing Berg (as well as AREA) to relinquish possession of the leased premises. Thus, it is clear that the debt for the rent is due only from AREA, not from Berg. In contrast, the debt represented by the overdue notes is

---

**5.** At the conclusion of the second hearing held on this complaint, on November 17, 1981, the defendants agreed to pay the rent as it came due under the lease from that date and to remove all of their property within 7 business days from the office which they had allegedly vacated in February, 1981. In addition, AREA asserted that it was exercising its right under the lease to renew it for another year. *See* N.T. at 18–19.

**6.** Section 553 of the Code provides in part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

due from the debtor to Berg. Thus, the two debts are not mutual debts, that is, between the same parties. Thus, there can be no right of setoff as to those debts. *See* 11 U.S.C. § 553(a). *See also, McDaniel National Bank v. Bridwel,* 74 F.2d 331 (8th Cir. 1934); *Ansfield v. Whitewater Oil Co.,* 254 F.Supp. 494 (D.C.Wis.1966); *In re J.A.G., Inc.,* 7 B.R. 624, 3 C.B.C.2d 345 (Bkrtcy.D. Mass.1980); *Irving Trust Co. v. Altman & Co.,* 151 Misc. 504, 270 N.Y.S. 781 (1933).

The above discussion also applies to the defendants' fourth defense. The payment of the obligation of Berg on the mortgage would entitle Berg, not AREA, to recover from the debtor while the rent herein is due to the debtor from AREA, not Berg. Thus, these two debts lack mutuality and may not be setoff against each other. Furthermore, there was no evidence that Berg actually paid anything on account of that mortgage prior (or after) the filing of the petition by the debtor. Therefore the debtor does not owe a prepetition debt thereon, even to Berg. Because § 553(a) of the Code preserves only the right of a creditor to setoff mutual prepetition debts, not a postpetition debt against a prepetition debt,[7] we conclude that there is no right of setoff with respect to Berg's obligation, if any, on the mortgage.

Based on all of the above, we conclude that AREA is entitled to a credit against rent due of $6,000.00 and that there, thus, remains a default under the lease, of $8,903.20 plus $1,400.00 per month from October 20, 1981, less any rental paid since that date. We find further that there is rent owing for Suite 213 of $4,169.95 plus $533.00 per month from October 20, 1981, to the date when the defendants removed all of their property from that office. Although the defendants asserted that they were not liable for rent for those premises, we conclude that they are liable for the time when they remained in possession of those premises by storing their personal property there.

---

7. *See, e.g., In re Shoppers Paradise, Inc.,* 8 B.R. 271 (Bkrtcy.S.D.N.Y.1980).

Because AREA is in default in its rental payments in the above amount and because we find that the debtor properly exercised its right to terminate the lease,[8] we conclude that the debtor is also entitled to possession of the premises.

---

8. *See* Exhibits P–4, P–5 and P–6. *See also,* note 3 and accompanying text, *supra.*